IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARTIN ALDULLAH RAHEEM SPRIGGS, *
    Plaintiff,
v.                                 *   CIVIL NO. WDQ-12-2698

DR. THOMPSON,
    Defendant.         *
                                 ***

MEMORANDUM OPINION

Martin Aldullah Raheem Spriggs, *pro se*, sued Jonathan Thompson, M.D., for damages arising from his medical treatment under 42 U.S.C. § 1983. Pending is Thompson's motion to dismiss or, in the alternative, for summary judgment. ECF No. 11. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the motion, construed as one for summary judgment, will be granted.

I.     Background

Spriggs claims that, on August 8, 2012, he was taken to see Thompson, to whom he told that he was not taking his morning medication, Depakote, because it made him feel like he was having a heart attack. ECF No. 3. He alleges that, despite telling Thompson that he was no longer taking the medication, Thompson continued to write passes for Spriggs to attend morning pill call. *Id.* Spriggs states that, every morning, his cell door was opened and he was threatened with rule infractions if he refused to attend pill call. *Id.*

Additionally, Spriggs states that he advised Thompson that every time he used the bathroom he bled from a hemorrhoid, but Thompson merely gave him Milk of Magnesia. *Id.* Spriggs also complains that he suffered from bumps all over his body, which Dr. Thompson failed to adequately treat. *Id.* He claims that his skin peeled, he had pustules on his hands, and his feet changed color. *Id.*

1

Spriggs's medical records and Thompson's affidavit demonstrate that Spriggs has a history of seizures secondary to epilepsy. ECF Nos. 11-4, 11-5. Spriggs has also been diagnosed as suffering from schizoaffective disorder, which results in episodes of psychosis, paranoia, and hallucinations. ECF No. 11-4 at 21-22.

In January 2012, Spriggs complained of constipation and hemorrhoids. *Id.* at 7-8. His medical records demonstrate that the condition was managed well with Dulcolax and Milk of Magnesia, resulting in a long period of time when Spriggs voiced no complaints of flare-ups of the condition. *Id.* at 83-103.

On November 2, 2012, Spriggs was examined by Thompson for complaints of hemorrhoid bleeding. *Id.* at 60. Spriggs denied any pain or change in bowel habits; examination revealed no hemorrhoids, and Spriggs's rectal walls and sphincter tone were normal. *Id.* at 60-61. Spriggs's stool sample appeared normal and tested negative for blood. *Id.* at 61. Thompson continued Spriggs Milk of Magnesia and Dulcolax and prescribed Hemorrhoidal-hc on an as needed basis. *Id.*

Spriggs next complained of hemorrhoids on December 17, 2012. *Id.* at 75. Examination revealed that Spriggs's abdomen was soft and non-tender. *Id.* Anal examination showed hemorrhoids.[1] *Id.* Spriggs was advised to continue his treatment plan, and raised no further complaints regarding hemorrhoids through January 24, 2013. *Id.*, p. 77-103.

On September 6, 2012, Spriggs filed a sick call slip complaining of bumps on his arms that were weeping with pus. *Id.* at 45. Spriggs was examined by Laura Smith, R.N. the following day. *Id.* at 48. She observed small bumps on Spriggs's arms and back. *Id.* Smith discussed

---

[1] Spriggs disputes that Thompson ever performed a rectal exam. ECF No. 13.

treatment options with Thompson, and Spriggs was prescribed Caladryl Clear. *Id.* Spriggs filed no further complaints regarding the rash.

Spriggs's history of seizures dates back to his childhood. *Id.* at 19. He has been treated with various medications including Phenobarbital--his preference because of a lack of side effects--Tegretol, Dilantan and Depakote. *See id.* at 2, 4, 19.

On February 22, 2012, Spriggs experienced breakthrough seizures and was prescribed Dilantin twice a day. *Id.* at 11-12. On March 16, 2012, Spriggs's medical records indicated that he had begun refusing Dilantin in the morning and was only taking the evening dose. *Id.* at 13. On April 2, 2012, Spriggs reported to his psychiatrist that Dilantin caused him to suffer problems with his gums and bad breath, and other anti-seizure medications caused additional problems: e.g., Keppra gave him chest pains and Tegretol made him feel high. *Id.* at 19-20. Spriggs's medical records note that his Dilantin levels were zero at his most recent lab check, revealing that he was not taking the medication; Spriggs was thereafter not prescribed Dilantin. *Id.* at 20.

Spriggs submitted a sick call slip on July 20, 2012, complaining that his morning seizure medicine "hurt his heart" and made him feel as though he were having a heart attack. He stated that he had stopped taking the medication. *Id.* at 100.

On August 8, 2012, Spriggs was examined by Thompson for a follow up appointment. *Id.* at 41. Spriggs denied any seizure activity and reported that he was not taking Depakote because it made him sick; he was, however, taking Phenobarbital. *Id.* Thompson discontinued the Depakote and continued Spriggs on Phenobarbital because the absence of seizure activity indicated effective seizure control. *See id.* at 42; ECF No. 11-4 ¶ 8.

On September 10, 2012, Spriggs filed suit, alleging that Thompson's treatment violated his civil rights and seeking $250,000. ECF Nos. 1, 3 (supplement). On March 7, 2013,

3

Thompson moved to dismiss or, in the alternative, for summary judgment. ECF No. 11. On March 26, 2013, Spriggs sent a letter to the Court discussing the relevant facts; it was not signed under penalty of perjury. ECF No. 13. Thompson did not reply.

II. Analysis

A. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Spriggs's Claims

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)

4

(*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant or his failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (*quoting Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (*citing Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

5

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference . . . ." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a medical provider linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refutes presence of doctor's subjective knowledge).

Spriggs's allegations that he was not provided necessary medical treatment for a skin rash, hemorrhoids, and treatment of his seizure disorder is belied by the record. Spriggs was evaluated in a timely manner by medical providers as to each of his claims and was provided medication to treat each of his complaints. *See generally* ECF No. 11-5. Further, Phenobarbital was prescribed to treat his seizure disorder because of his stated preference. *See id.* at 2, 4, 19-20. However, when Spriggs began suffering breakthrough seizures, additional medications were added to his regimen. *See id.* at 11-12. After Spriggs complained about taking the medication and indicated noncompliance--which was supported by lab reports--the medication was discontinued. *See id.* at 20. Spriggs's seizure disorder was thereafter managed by the continuation of Phenobarbital because he had suffered no recent breakthrough seizures while solely taking the Phenobarbital. *See* ECF Nos. 11-4 ¶ 8, 11-5 at 41-42. There is no evidence that any further treatment was deemed necessary as to any of Spriggs's complaints. Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Although it will grant summary judgment for Thompson, the Court does not imply that Spriggs is not entitled to medical treatment for his serious conditions. The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential

test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). There are no exceptional circumstances here. The Plaintiff has been evaluated repeatedly and been provided appropriate treatment. Accordingly, the motion, construed as one for summary judgment, will be granted.

III. Conclusion

For the reasons stated above, Thompson's motion, construed as one for summary judgment, will be granted.

Date: 6/12/13

William D. Quarles, Jr.
United States District Judge